**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS MARTIN, on behalf of | ) | |
| Himself and others similarly situated | ) | |
| Plaintiff, | ) | 1:12-cv-6421 |
| | ) | |
| v. | ) | |
| | ) | |
| COMCAST CORPORATION, | ) | JURY TRIAL DEMAND |
| Defendant. | ) | |

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff respectfully requests that, pursuant to both Fed.R.Civ.P. 23(b)(2) and 23(b)(3), this Court certify this Telephone Consumer Protection Act case as a class action for the following to classes of similarly situated persons:

Robocall Class: All persons who, within four years of filing this complaint, Comcast or someone on its behalf called their cellular telephone number using an automatic telephone dialing system and/or a prerecorded or artificial voice where the purpose of the call was to sell goods and services, where any such calls were made at a time when there was no relationship between Comcast and the called party (e.g. after termination of service).

Do-Not-Call Class: All persons who on or after a date four years before the filing of this complaint, defendant or someone on its behalf called on their residential or cellular telephone whose numbers are listed on the National Do Not Call Registry, at least twice within any 12 month period, in order to solicit sale of goods or services, where defendant does not have a signed, written agreement between the called party and Comcast that states the consumer agrees to be contacted for telemarketing purposes by Comcast, and includes the telephone number to which the calls were placed. [47 C.F.R. §64.1200(c)(2)(ii).]

Plaintiff further requests that the Court appoint plaintiff Nicholas Martin as the class representative, and Burke Law Offices, LLC as class counsel.

In further support of this motion, plaintiff states:

1.      The TCPA, 47 U.S.C. §227(b) prohibits any person from calling cell phones using autodialers and/or prerecorded messages; so-called "robocalls." *Mims v. Arrow Financial Services,*

*LLC*, 132 S.Ct. 740, 745 (2012); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012).

Any telephone system that has the capacity to dial numbers without human intervention is a

"predictive dialer" and is regulated by the Act. *In re Rules and Regulations Implementing the*

*Telephone Consumer Protection Act of 1991*, GC Doc. 02-278, 23 FCC Rcd. 559, 566 paragraphs

12-14 (January 4, 2008).

2.      The TCPA prohibits persons or entities from initiating telephone solicitations to

"Do Not Call" ("DNC") registered telephone subscribers. 47 U.S.C. § 227(c); 47 C.F.R. §

64.1200(c). A person whose number is on the DNC Registry, and who has received more than

one telephone call on her residential telephone within any 12-month period by or on behalf of

the same entity in violation of the TCPA, can sue the violator and seek statutory damages and

an order enjoining future violations. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c). The FCC ruled

that cellular telephones were subject to the same protections as residential lines in 2003. In re

Rules and Regulations Implementing the Telephone Consumer Protection Act, 18 FCC Rcd.

14,014, 14,038-14,040;  33-37 (July 3, 2003).

3.      Defendant Comcast Corporation ("Comcast") violated *both* provisions by calling

plaintiff on his cell phone using a predictive dialer more than twice within a 12 month period,

for the purpose of selling its products and services. Because subsections 227(b)(3) and 227(c)(5)

recompense different wrongs, "a person may recover statutory damages [for violations of each

subsection,] even if both violations occurred in the same telephone call." *Charvat v. NMP, LLC*,

656 F.3d 440, 449 (6th Cir. 2011).

4.    The United States Supreme Court recently found that federal question subject matter jurisdiction exists for debt collection TCPA claims against creditors, such as this one. The unanimous Court explained the Congressional intent of the law this way:

> In enacting the TCPA, Congress made several findings relevant here. Unrestricted telemarketing, Congress determined, can be an intrusive invasion of privacy. TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings).
>
> In particular, Congress reported many consumers are outraged over the proliferation of intrusive, nuisance telemarketing calls to their homes. Automated or prerecorded telephone calls made to private residences, Congress found, were rightly regarded by recipients as an invasion of privacy.

*Mim* , 132 S.Ct. 740, 745 (2012) (some internal quotation marks and citations omitted, paragraph break supplied).

5.    The Seventh Circuit in *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012), explained why "robocalls" like those which are challenged in this case cause so much annoyance and frustration among consumers:

> The machine, called a predictive dialer, works autonomously until a human voice comes on the line. If that happens, an employee in Bill Collector's call center will join the call. But Customer no longer subscribes to Cell Number, which has been reassigned to Bystander. A human being who called Cell Number would realize that Customer was no longer the subscriber. But predictive dialers lack human intelligence and, like the buckets enchanted by the Sorcerer's Apprentice, continue until stopped by their true master.
>
> Meanwhile Bystander is out of pocket the cost of the airtime minutes and has had to listen to a lot of useless voicemail. (We use Bill Collector as the caller, but this simplified description could as easily use an advertiser that relies for consent on earlier transactions with Customer, or a box that Consumer checked on a vendor's web site.)

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

6.    Numerous TCPA class actions have been certified. At least two such certification orders, *Balbarin v. North Star Capital Acquisition*, LLC, 2010 C 1846, 2011 U.S. Dist. LEXIS 686

(N.D. Ill. Jan. 5, 2011), and *Mitchem v. Illinois Collection Service*, 2009 C 7274, 2011 U.S. Dist. LEXIS 714 (N.D. Ill. Jan. 3, 2011) were §227(b) autodialer/prerecorded message cases against debt collection agencies, and are analogous to this telemarketing case.

7.     So-called "junk fax" TCPA cases, which are regularly certified in this District, are also analogous to this one. The Seventh Circuit recently refused to reverse Judge Bucklo's certification of a TCPA "junk fax" case on any ground other than the adequacy of the questionably truthful class representative in *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721 (7th Cir. 2011). While the District Judge was instructed to reevaluate adequacy, the Seventh Circuit stated that the merits of the case, including the defendant's "consent" defense "-win or lose - might well be suitable for determination on a classwide basis." *Id.* at 728.

8.     Other TCPA class certifications abound. *Sadowski v. Med1 Online, LLC*, 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *Hinman v. M & M Rental Ctr.*, 06 C 1156, 2008 U.S. Dist. LEXIS 27835 (N.D.Ill., April 7, 2008); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D.Wash. 2007); *Gortho, Ltd., v. Websolv*, 03 CH 15615 (Cir. Ct. Cook Co., March 6, 2008); *Travel 100 Group, Inc. v. Empire Cooler Service, Inc.*, 03 CH 14510, 2004 WL 3105679 (Cook Co. Cir. Ct., Oct. 19, 2004); *Rawson v. C.P. Partners LLC*, 03 CH 14510 (Cook Co. Cir. Ct., Sept. 30, 2005); *Lampkin v. GGH, Inc.*, 146 P.3d 847 (Okla. Ct. App. 2006); *Display South, Inc. v. Express Computer Supply, Inc.*, 961 So.2d 451, 455 (La. App. 1st Cir. 2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc.*, 992 So. 2d 510 (La. App. 1st Cir. 2008); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. (App.) 94, 50 P.3d 844 (2002); *Core Funding Group, LLC v. Young*, 792 N.E.2d 547 (Ind.App. 2003); *Nicholson v. Hooters of Augusta, Inc.*, 245 Ga.App. 363, 537 S.E.2d 468 (2000) (private class actions).

9.     Plaintiff files this motion along with the complaint in order to avoid the plaintiff from being "picked off" through a Rule 68 or individual settlement offer *Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011), and respectfully requests that this Court stay briefing on the motion and provide plaintiff sufficient discovery to further support and supplement this motion.

10.    All requirements of Rule 23 of the Federal Rules of Civil Procedure have been met.

11.    <u>Numerosity</u>.  There is no reason to purchase or use a predictive dialer, other than to make a large volume of calls.

12.    Furthermore, given the nature of the alleged violations, i.e. making automatically dialed telemarketing calls, it is reasonable to infer that the defendant made impermissible robocalls to more than the 40 or so individuals necessary to satisfy numerosity. Joinder is therefore impracticable and satisfy numerosity for certification purposes. Fed.R.Civ.P. 23(a)(1). Plaintiff requests time enough in briefing this motion in order to obtain discovery on this issue.

13.    <u>Common Questions Predominate</u>.  There exist common questions of law and fact, which predominate over any individual questions.  The class definition ensures that all of class members have identical claims; both factually and legally.  Fed.R.Civ.P. 23(a)(2) & 23(b)(3).

14.    <u>Typicality</u>.  Similarly, the plaintiff's claims are typical of the other class members. All of the claims are based upon a substantially identical set of facts and circumstances. Fed.R.Civ.P. 23(a)(3).  The same dialers and similar messages were used for the entire class.

15.    <u>Adequacy</u>.  Plaintiff and counsel will fairly and adequately represent the class. Plaintiff's interests in this litigation are aligned with those of the class, and he has hired a lawyer experienced in class action and consumer litigation.  <u>Exhibit A</u>.  Fed.R.Civ.P. 23(a)(4).

16.    <u>Defendant's Actions Applicable Generally</u>.  The defendant has acted or failed to act on grounds generally applicable to each class member, and it is these generalized actions around which this case revolves.  Defendant called each class member on his or her cellular telephone using an autodialer and prerecorded message. Class-wide Injunctive relief under the TCPA 47 U.S.C. §227(b)(3)(A), along with corresponding declaratory relief is therefore appropriate.  Fed.R.Civ.P. 23(b)(2).  All class members, who are the incorrect party, would benefit from the cessation of these annoying calls and defendant's opt-out policy.

17.    <u>Superiority</u>.  It is desirable to have this case litigated as a class action because the class mechanism is superior to individual actions.  Plaintiff is not aware of any other cases alleging similar facts against these defendants; likely because the other members of the class are not aware that their rights have been violated.  Further, a class action is necessary to determine that defendants' conduct is a violation of law and to redress the class members' statutory damages.   Fed.R.Civ.P. 23(b)(3).  The issue of whether defendant's equipment and messages complied with the TCPA predominates over any individual issues that may arise.

18.    Because the prerequisites of Fed.R.Civ.P. 23(b)(2) and 23(b)(3) are satisfied, this Court should certify the class.  Plaintiff requests that the Court set a briefing schedule for this motion sufficient to permit time for service of the complaint, discovery and the filing of a supplemental memorandum in support of this motion.

19.    There is an affirmative defense available to a "robocall" TCPA defendant like Comcast, which may be proven by showing through clear and convincing evidence that it received the phone number it called from the called party, with respect to the account about which it was calling. *In re Rules and Regulations Implementing the Telephone Consumer*

*Protection Act of 1991*, GC Doc. 02-278, 23 FCC Rcd. 559, 565 ¶¶ 9-12 (January 4, 2008) ("We emphasize that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed.") The robocall class in this case is defined so that the defense is not available to any class member, because Comcast had no relationship with plaintiff or any other class member, at the time of the calls. The DNC class is similarly defined so that Comcast's affirmative defenses, if any, will apply to plaintiff and the class equally.

WHEREFORE, plaintiff respectfully requests that this Court certify this case as a class action as to the two classes defined herein, and appoint plaintiff Nicholas Martin as class representative, and Burke Law Offices, LLC as class counsel.

Respectfully submitted,

/s/Alexander H. Burke

Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

# Exhibit A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS MARTIN, on behalf of | ) | |
| Himself and others similarly situated | ) | |
| Plaintiff, | ) | 1:12-cv-6421 |
| | ) | |
| v. | ) | |
| | ) | |
| COMCAST CORPORATION, | ) | JURY TRIAL DEMAND |
| Defendant. | ) | |

## DECLARATION OF ALEXANDER H. BURKE

1.      I am Alexander H. Burke, manager of Burke Law Offices, LLC.

2.      In September 2008, I opened Burke Law Offices, LLC.  This firm concentrates on consumer class action and consumer work on the plaintiff side.  Since the firm began, it has prosecuted cases for consumers under the Telephone Consumer Protection Act, Fair Debt Collection Practices Act, Fair Credit Reporting Act, Equal Credit Opportunity Act, Electronic Funds Transfer Act, Illinois Consumer Fraud Act, Truth in Lending Act and the Fair Labor Standards Act, among others.  The firm also occasionally accepts mortgage foreclosure defense or credit card defense case.  Except for debt collection defense cases, the firm works almost exclusively on a contingency basis.

3.      My legal career began at Edelman, Combs, Latturner & Goodwin, LLC, in Chicago, Illinois, where I spent nearly three years litigating exclusively consumer cases.  I estimate that approximately sixty-five percent of those cases were class actions.  In 2007, I joined the Law Offices of Keith J. Keogh, Ltd., another consumer rights law firm, where my practice was again limited almost exclusively to consumer class action.

4.      I make substantial efforts to remain current on the law, including class action issues.  I attended the National Consumer Law Center Consumer Rights Litigation Conference in 2006, 2007, 2008 and 2009, and was an active participant in the Consumer Class Action Intensive Symposium at each of those conferences.  In October 2009, I spoke on a panel of consumer class action attorneys welcoming newcomers to the conference.  In addition to regularly attending Chicago Bar Association meetings and events, I was the vice-chair of the Chicago Bar Association's consumer protection section in 2009 and the chair in 2010. In November 2009, I moderated a panel of judges and attorneys discussing recent events and decisions concerning arbitration of consumer claims and class action bans in consumer contracts. I have been asked to speak regarding the Telephone Consumer Protection Act by both the National Association of Consumer Advocates and the National Consumer Law Center, and am scheduled to do so for both in the second half of 2012.

5.      Some notable class actions and other cases that I have worked on include: *Martin v. Leading Edge Recovery Solutions, LLC*, case no. 1:11-cv-5886 (N.D.Ill. Aug. 10, 2012)

(order denying motion to dismiss); *Soppet v. Enhanced Recovery Co.*, 2011 WL 3704681(N.D.Ill. Aug 21, 2011), *aff'd*, 679 F.3d 637 (7th Cir. 2012) (TCPA defendant's summary judgment motion denied. My participation was limited to litigation in the lower court); *D.G. ex rel. Tang v. William W. Siegel & Associates, Attorneys at Law, LLC*, 2011 WL 2356390 (N.D.Ill. Jun 14, 2011); *Powell v. West Asset Management, Inc.*, 773 F.Supp.2d 898 (N.D.Ill. 2011)(debt collector TCPA defendant's "failure to mitigate" defense stricken for failure to state a defense upon which relief may be granted); *Fike v. The Bureaus, Inc.*, 09-cv-2558 (N.D.Ill. Dec. 3, 2010) (final approval granted for $800,000 TCPA settlement in autodialer case against debt collection agency); *Donnelly v. NCO Financial Systems, Inc.*, 263 F.R.D. 500 (N.D.Ill. Dec. 16, 2009) Fed.R.Civ.P. 72 objections overruled in toto, 2010 WL 308975 (N.D.Ill. Jan 13, 2010) (novel class action and TCPA discovery issues decided favorably to class); *Cicilline v. Jewel Food Stores, Inc.*, 542 F.Supp.2d 831 (N.D.Ill. 2008) (FCRA class certification granted); 542 F.Supp.2d 842 (N.D.Ill. 2008) (plaintiffs' motion for judgment on pleadings granted); *Harris v. Best Buy Co.*, 07 C 2559, 2008 U.S. Dist. LEXIS 22166 (N.D.Ill. March 20, 2008) (Class certification granted); *Matthews v. United Retail, Inc.*, 248 F.R.D. 210 (N.D.Ill. 2008) (FCRA class certification granted); *Redmon v. Uncle Julio's, Inc.*, 249 F.R.D. 290 (N.D.Ill. 2008) (FCRA class certification granted); *Harris v. Circuit City Stores, Inc.*, 2008 U.S. Dist. LEXIS 12596, 2008 WL 400862 (N.D. Ill. Feb. 7,2008) (FCRA class certification granted); aff'd upon objection (Mar. 28, 2008); *Harris v. Wal-Mart Stores, Inc.*, 2007 U.S. Dist. LEXIS 76012 (N.D. Ill. Oct. 10, 2007) (motion to dismiss in putative class action denied); *Barnes v. FleetBoston Fin. Corp.*, C.A. No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072 (D.Mass. Aug. 22, 2006) (appeal bond required for potentially frivolous objection to large class action settlement, and resulting in a $12.5 million settlement for Massachusetts consumers); *Longo v. Law Offices of Gerald E. Moore & Assocs., P.C.*, 04 C 5759, 2006 U.S. Dist. LEXIS 19624 (N.D.Ill. March 30, 2006) (class certification granted); *Nichols v. Northland Groups, Inc.*, case nos. 05 C 2701, 05 C 5523, 06 C 43, 2006 U.S. Dist. LEXIS 15037 (N.D.Ill. March 31, 2006) (class certification granted for concurrent classes against same defendant for ongoing violations); *Lucas v. GC Services, L.P.*, case No. 2:03 cv 498, 226 F.R.D. 328 (N.D.Ind. 2004) (compelling discovery), 226 F.R.D. 337 (N.D.Ind. 2005) (granting class certification); *Murry v. America's Mortg. Banc, Inc.*, case nos. 03 C 5811, 03 C 6186, 2005 WL 1323364 (N.D. Ill. May 5, 2006) (Report and Recommendation granting class certification), aff'd, 2006 WL 1647531 (June 5, 2006); *Rawson v. Credigy Receivables, Inc.*, case no. 05 C 6032, 2006 U.S. Dist. LEXIS 6450 (N.D. Ill. Feb. 16, 2006) (denying motion to dismiss in class case against debt collector for suing on time-barred debts).

6.      I graduated from Colgate University in 1997 (B.A. International Relations), and from Loyola University Chicago School of Law in 2003 (J.D.).  During law school I served as an extern to the Honorable Robert W. Gettleman of the District Court for the Northern District of Illinois and as a law clerk for the Honorable Nancy Jo Arnold, Chancery Division, Circuit Court of Cook County. I also served as an extern for the United States Attorney for the Northern District of Illinois and was a research assistant to adjunct professor Honorable Michael J. Howlett, Jr.

7.      I was the Feature Articles Editor of the Loyola Consumer Law Review and Executive Editor of the International Law Forum. My published work includes International Harvesting on the Internet: A Consumer's Perspective on 2001 Proposed Legislation Restricting the Use of Cookies and Information Sharing, 14 Loy. Consumer L. Rev. 125 (2002).

8.      I became licensed to practice law in the State of Illinois in 2003 and the State of Wisconsin in March 2011, and am a member of the bar of the United States Court of Appeals for the Seventh and First Circuits, as well as the Northern District of Illinois, Central District of

Illinois, Southern District of Illinois, Eastern District of Wisconsin, Northern District of Indiana and Southern District of Indiana.  In 2009-10, I was the vice chair of the Consumer Protection section of the Chicago Bar Association, and was the chair of that group for the 2010-2011 year.  I am also a member of the Illinois State Bar Association, the Seventh Circuit Bar Association and the American Bar Association, as well as the National Association of Consumer Advocates.

9.      I have recently been asked to speak regarding Telephone Consumer Protection Act issues by the National Association of Consumer Advocates and by the National Consumer Law Center, and am scheduled to do so in the second half of 2012.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Chicago, Illinois

August 14, 2012                                              /s/Alexander H. Burke