UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS MARTIN, on behalf of Himself and other similarly situated | ) ) | |
| Plaintiff, | ) ) | 1:12-cv-6421 |
| v. | ) ) | Judge Nordberg |
| COMCAST CORPORATION, | ) | JURY TRIAL DEMAND |
| Defendant. | ) | |

**PLAINTIFF'S UNOPPOSED MOTION TO FILE RESPONSE BRIEF *INSTANTER*_**

Plaintiff respectfully requests that this Court grant him leave to file his opposition to Comcast's motion to dismiss, *instanter*, and permit Comcast to file its reply brief by December 3, 2012. Comcast does not oppose this motion. In support, plaintiff states:

1. This is a Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. case concerning telemarketing calls to plaintiff's cellular telephone. Comcast used illegal automated equipment to make such calls, and plaintiff was on the national Do Not Call Registry at the time of the calls and had specifically requested not to be contacted by Comcast.

2. Comcast has moved to dismiss all claims. On October 17, 2012, this Court set a briefing schedule whereby plaintiff was to file his response brief by November 14, 2012; defendant was to reply by November 28, 2012. Because of a scheduling error, plaintiff did not file his brief on November 14, 2012, and requests leave to file the brief one day later, on November 15, 2012, *instanter*. The brief has been completed, and is attached hereto.

3. Plaintiff has conferred with defense counsel, and Comcast has no opposition to this motion. Comcast has requested that its reply brief due date be reset to December 3, 2012,

1

so as to permit time for the Thanksgiving holiday. Plaintiff certainly has no objection to this extension, and requests that the Court reset the reply date, too.

4.  This motion is filed for the reasons herein, and not for any improper or dilatory purpose.

WHEREFORE, plaintiff respectfully requests that the Court permit him leave to file the attached opposition to Comcast's motion to dismiss, *instanter*, and permit Comcast to file its reply brief by December 3, 2012. Comcast does not oppose this motion.

Respectfully submitted,

/s/Alexander H. Burke

Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS MARTIN, on behalf of Himself and other similarly situated | ) ) | |
| Plaintiff, | ) ) | 1:12-cv-6421 |
| v. | ) ) | Judge Nordberg |
| COMCAST CORPORATION, | ) | JURY TRIAL DEMAND |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

> Few rights are so fundamental as the right to privacy in our daily lives, yet few are under such frontal assault. Our dinners are disrupted by unwanted phone calls. Our computer accounts are besieged with bothersome spam. Our mailboxes are swollen with advertisements for products, goods and services. We conduct our whole lives against the white noise of commercial solicitation. These intrusions exhaust us, irritate us and threaten our cherished right to be left alone.
> \*\*\*\*
> The TCPA is about tools. It gives consumers the tools they need to build a high and strong fence around their homes to protect them from unsolicited telephone calls
> and faxes. It also allows other consumers to have a lower fence or no fence at all, if they wish to take advantage of these commercial messages.

Separate statements of: *Commissioner Michael Copps and Chairman Michael K. Powell, In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278 18 FCC Rcd. 14,014, 14,176; 14,174 (July 3, 2003) ("*In re TCPA 2003*").

These Federal Communications Commissioners' remarks reflect the policy and purpose behind the federal Telephone Consumer Protection Act ("TCPA"), which broadly prohibits any person from using an "automatic telephone dialing system" to call any cellular telephone. 47 U.S.C. §227(b)(1)(A)(iii); 47 C.F.R.§64.1200(a)(1)(iii). The TCPA also prohibits making telemarketing calls to phone numbers that are on the national Do Not Call ("DNC") Registry, and

1

to phone numbers any consumer has asked be placed on a company-specific, internal Do Not Call list. 47 C.F.R. §§64.1200(c)(2); 64.1200(d)(3).

Plaintiff had Comcast internet service in 2011, and terminated that service on October 4, 2011, both by telephone and in writing. Exhibit A. Plaintiff's termination letter also requested that Comcast not call him for any purpose, including telemarketing. Plaintiff was on the national DNC Registry at all relevant times. Ignoring all of these requests not to be called, Comcast inundated plaintiff's cellular telephone with no fewer than eight telemarketing phone calls over a period of six days.

Count I of the complaint alleges that these calls violate the TCPA's prohibitions against autodialed calls to cell phones, pursuant to 47 U.S.C. §227(b)(1)(A)(iii) and 47 C.F.R.§64.1200(a)(1)(iii). Count II of the complaint alleges violations of 47 U.S.C. §227(c)(5), which prohibits telemarketing calls to any phone number that either: (1) is on the national DNC Registry, or (2) should be on the caller's company-specific DNC registry.

Comcast's motion to dismiss is incorrect procedurally and on its merits and should be denied.

**I.      The Telephone Consumer Protection Act**

Advances in telecommunications technology have provided benefits to American society. But those benefits are not cost-free; new technologies bring with them new ways to intrude upon individual privacy and waste the time and money of consumers. The 1980s and 90s brought an explosion of abuses of telephone and facsimile technology, including the use of autodialers to clog telephone lines with unwanted calls, "robocalls" that leave unsolicited or

2

unwanted, prerecorded messages, and "junk faxes" that consume the recipients' paper and ink and interfere with the transmission of legitimate messages.

"Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 744 (2012).

In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly and unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Congress also specifically found that,

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion,

Id. at § 12; cited in *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D.Ill. Aug. 10, 2012). Congress also specifically found that,

> the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call….

*Id*. at §§ 12-13. See also, *Mims*, 132 S.Ct. at 744. Judge Easterbrook stated it this way:

> The Telephone Consumer Protection Act (TCPA or "the Act"), 47 U.S.C. § 227, is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered—and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir.2012).

II.     **Facts**

Plaintiff's cellular telephone is registered with the national Do Not Call Registry. Cmplt ¶10. Defendant Comcast, or some authorized entity on its behalf, called Plaintiff's cellular telephone at least eight times, including (but not necessarily limited to) calls at the following approximate dates and times: October 8, 2011 at 9:59 am; October 10, 2011 at 7:21 pm; October 10, 2011 at 1:45 pm ; October 11, 2011 at 5:49 pm; October 11, 2011 at 11:48 am; October 12, 2011 at 7:40 pm; October 13, 2011 at 10:51 am; October 14, 2011 at 9:25 am. Cmplt ¶11. There very likely are more calls about which plaintiff does not know. Plaintiff answered two of these calls, one on October 10, 2011 and one on October 11, 2012. Cmplt ¶11. Each of these calls was made using an automatic telephone dialing system, as that term is defined by the Telephone Consumer Protection Act and implementing regulations and orders. Cmplt ¶12.

Each of the calls to plaintiff were made after plaintiff had cancelled service with Comcast, and were initiated by Comcast for the purpose of selling Comcast good and/or services to plaintiff. Cmplt ¶13. Plaintiff also separately demanded that the calls stop, in writing, in a letter mailed on or about October 4, 2011. Cmplt ¶14; Exhibit A. It is the practice of Comcast to call customers who have cancelled their service in order to try to entice their former customers to return to Comcast. Cmplt ¶15. Plaintiff and the class have been substantially damaged by defendant's calls. Their privacy was improperly invaded, they were charged for the calls and they were annoyed. Cmplt ¶16.

Plaintiff is not alone in complaining about Comcast's telemarketing practices. Attached as Exhibit B is an excerpt from approximately 900 consumer complaints received by counsel as a

4

result of Freedom of Information Act requests to the Federal Trade Commission and the Federal Communications Commission. And in 2009 Comcast paid $900,000 to the Federal Trade Commission to settle charges that it had violated the same DNC rules that are the subject of this case. Exhibit C.

### III. Motion to Dismiss Standard

In reviewing a motion to dismiss, the court takes as true all facts in the complaint and draws all reasonable inferences in favor of the plaintiff, not defendant. *Dixon v. Page*, 291 F.3d 485, 486–87 (7th Cir.2002). To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the claims and establish that the requested relief is plausible on its face, although those facts and inferences need not be probable. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### IV. The Complaint Does Not Support Comcast's Position that it Had Plaintiff's "Prior Express Consent" to be Called Using an Automatic Telephone Dialing System.

The TCPA section 47 U.S.C. §227(b)(1)(A)(iii) broadly prohibits all autodialed calls to cellular telephones "regardless of the content of the call." *Id.*; *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd 559, 566 ¶10 (Jan. 4, 2008) ("*In re TCPA 2008*"). A TCPA defendant can avoid liability if it can show that it had the called party's "prior express consent" to receive autodialed calls.

Comcast argues that the complaint should be dismissed because plaintiff allegedly consented to receive autodialed telemarketing calls from it. This argument is unavailing for at least two reasons. First, "prior express consent" is an affirmative defense, which Comcast has not yet proven. Second, as Comcast concedes, the complaint alleges that plaintiff revoked any

consent that might have previously been given. The motion to dismiss plaintiff's claims under section 227(b) should be denied.

### A. "Prior Express Consent" is an Affirmative Defense to a §227(b) claim, And Must be Proven by Comcast.

"Express consent' is not an element of a TCPA plaintiff's *prima facie* case, but rather is an affirmative defense for which the defendant bears the burden of proof." *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F.Supp.2d 989, 905 (N.D.Ill. 2012), *later opinion*, 2012 WL 3835089 (Sept. 4, 2012) (granting plaintiff's summary judgment motion on issue of consent) reconsideration denied, 2012 WL 5389722 (Nov. 2, 2012). The relevant subsection of the TCPA states the general prohibition against autodialed calls to cell phones, and only mentions consent as a parenthetical using the phrase "other than." 47 U.S.C. §227(b)(1)(A). This construction clearly establishes consent as an *exception* to the general rule. It is black-letter law that the proponent of a federal statutory exception bears the burden to prove such. *FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45 (1948).

This statutory analysis is consistent with the FCC's order interpreting the TCPA: "To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent." In re TCPA 2008, 23 FCC Rcd. at 565, ¶10.

There is nothing in the complaint to support Comcast's bald assertion that plaintiff "provided his wireless number to Comcast as his primary contact information." MTD at 5. Examination of "prior express consent" in this case requires inquiry into matters that are outside the pleadings. In any event, at the pleading stage, facts and inferences are to be taken in

6


favor of the plaintiff, not defendant. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir.2009). The motion to dismiss should be denied for this reason.

### B. Plaintiff Should Not be Penalized for Asking that Comcast Not Call Him.

On page 5 of its brief Comcast characterizes paragraph 14 of the complaint as plaintiff pleading that he "withdrew his consent." Based upon this interpretation, defendant asks the Court to consider this paragraph as a concession that consent existed previously. Paragraph 14 states:

> Plaintiff also separately demanded that the calls stop, in writing, in a letter mailed on or about October 4, 2011.

Comcast's argument stacks inference upon inference: there is nothing in this paragraph that even comes close to a concession that plaintiff consented to receive telemarketing calls.[1] Nor is any presumption in favor of Comcast's yet-to-be-asserted consent affirmative defense appropriate based upon paragraph 4 of the complaint. That paragraph alleges:

> The [TCPA's national DNC Registry regulation] contains a safe harbor provision that exempts from liability a person or entity making telephone solicitations (or on whose behalf telephone solicitations are made) who has obtained the subscriber's prior express invitation or permission to make the call. 47 C.F.R. § 64.1200(c)(2)(ii). Plaintiff is not aware of ever having given defendant any consent or permission to be called on his cellular telephone.

---

[1] Even if Comcast comes up with *evidence* in support of its argument that plaintiff gave it his cellular telephone number, Comcast will not be able to prove that it *ever* had plaintiff's prior express consent for several reasons. For example, the mere provision of one's cellular number to a creditor does not constitute consent to receive non-debt collection calls. In cases of telemarketing, prior express consent must be clearly and unmistakably stated. *Thrasher-Lyon v. CCS Commercial, LLC*, 2012 WL 3835089 (N.D.Ill. Sept. 4, 2012), reconsideration denied, 2012 U.S. Dist. LEXIS 157230 (N.D. Ill. Nov. 2, 2012) citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009); *Leckler v. Cashcall, Inc.*, 554 F.Supp.2d 1026 (N.D.Cal.2008) and *Edeh v. Midland Credit Management, Inc.*, 748 F.Supp.2d 1030 (D.Minn. 2010). This is particularly true after a relationship has been terminated or there has been a demand that the calls stop. *Chesbro v. Best Buy Stores, L.P.*, --- F.3d ----, 2012 WL 4902839, at *4 (9th Cir. Oct. 17, 2012) (entering judgment for plaintiff as to consent because plaintiff asked that calls stop).

The Court is to take all reasonable inferences in favor of plaintiff on a Rule 12 motion. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir.2009).

Accepting Comcast's argument would be to take inferences in favor of defendant, which the Court should not do at this stage of the proceedings. *Greene v. DirecTV, Inc.*, 2010 WL 1506730, at *2 (Apr. 14, 2010) (refusing to dismiss case because "the four corners of Greene's complaint assert that DirecTV used an automatic telephone dialing system or an artificial or prerecorded voice to call Greene's cell phone when she had not provided prior express consent to receiving such calls.")

The motion to dismiss should be denied.

### V.     Comcast Violated the "DNC" Registry Provisions of the TCPA.

On top of prohibiting autodialed calls to cell phones, the TCPA *also* prohibits (1) making telemarketing calls to telephone numbers that are on the national DNC Registry pursuant to 47 C.F.R. §64.1200(c)(2), and/or (2) calling any number a consumer has requested the company not call; the so-called "company-specific" Do Not Call rule. 47 C.F.R. §64.1200(d)(3).[2] Such calls are impermissible regardless of whether autodialer or prerecorded message technology is used, and a private right of action attaches if there are two or more such calls within any twelve-month period. 47 U.S.C. §227(c)(5). Comcast violated both of these DNC rules because it called plaintiff more than twice within a one-year period, and plaintiff was on the national DNC Registry and should have been on Comcast's company-specific DNC list when Comcast called him.

---

[2] Plaintiff seeks one set of damages pursuant to section 227(b)(3), and one set of damages pursuant to 227(c)(5) for each call. *Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011). The complaint does not attempt to "stack" damages for multiple violations of section 227(c) arising out of a single call.

Comcast urges dismissal of both types of claims, arguing that it is entitled to an Existing Business Relationship defense ("EBR"). However, dismissal is inappropriate because EBR is an affirmative defense for which the defendant bears a clear and convincing burden of proof. Furthermore, EBR is not available for telemarketing calls to cellular telephones, and is immediately extinguished upon termination by either party.

Comcast also argues the company-specific DNC claims should be dismissed because, in its view, it was entitled to a thirty day "telemarketing grace period" after plaintiff asked that it stop calling him. Comcast is incorrect as a matter of law on this point, too, and the motion to dismiss should be denied.

**A. EBR is an Affirmative Defense, and a Decision on its Merits is Inappropriate on the Pleadings Alone.**

And in any event, EBR is an affirmative defense, for which the defendant bears a "clear and convincing" burden of proof:

> Any seller or telemarketer using the EBR as the basis for a telemarketing call must be able to demonstrate, with clear and convincing evidence, that they have an EBR with the called party.

*In re TCPA 2003,* 18 FCC Rcd. at 14,081, ¶115. While in some instances a defendant may "prove" an affirmative defense through the allegations in the complaint, the complaint does not contain the necessary elements for Comcast to do so here. The motion to dismiss should be denied on this ground alone.

**a. Telemarketers are Not Entitled to any "Existing Business Relationship" Exemption for Calls to Cellular Telephones.**

9

By its own terms, the EBR exemption applies only to residential line calls, and not mobile phone calls. The exemption exists in 47 C.F.R. §64.1200(c)(4), and says:

> The term established business relationship for purposes of telephone solicitations means a prior or existing relationship formed by a voluntary two-way communication <u>between a person or entity and a **residential subscriber** with or without an exchange of consideration,</u> on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated **by either party**.[3]

The EBR exemption is simply not available for telemarketing calls to wireless customers.

### b. EBR Immediately Disappears Upon Termination "By Either Party."

Comcast argues that an EBR continues for eighteen months, regardless of whether a consumer demands that calls cease. That Comcast is wrong on this point is clear when one reviews the entire applicable paragraph (quoted above) including the last three words, which were omitted from Comcast's brief. 47 C.F.R. §64.1200(f)(4).

Plaintiff terminated any EBR between him and Comcast, both when he cancelled his service, Cmplt ¶ 13, and when he sent <u>Exhibit A</u>.

Further support for this position is found at the end of paragraph 113 of the 2003 Order, where the FCC makes clear that any EBR between a consumer and telemarketer is terminated when the consumer requests that calls cease:

> In the context of telemarketing calls, a consumer's "prior or existing relationship" continues for eighteen (18) months (3 months in the case of inquiries and applications) <u>or until the customer asks to be placed on that company's do-not-call list</u>.

---

[3] Underlined portions of this quotation represent phrases that were omitted from various block quotes in defendant's brief. The regulatory subsection appears here in its entirety. The bold portions represent passages plaintiff wishes to highlight.

10

*In re TCPA 2003,* 18 FCC Rcd. at 14,079, ¶113. The underlined portion was omitted from Comcast's brief.

Plaintiff alleges that he requested to be placed on Comcast's Do Not Call list on October 4, 2012. And although a "reasonable time" standard exists for compliance with company-specific DNC requests, there is no such grace period for calls where an EBR has been "terminated by either party." Compare 47 C.F.R. §64.1200(f)(4), with 47 C.F.R. §64.1200(d)(3). In other words, there is a "reasonable" grace period for company-specific DNC compliance, but termination of EBR is immediate.[4] The motion to dismiss should be denied.

**B. Telemarketers have a "Reasonable Time" to Stop Calling Once Asked to be Placed on their Internal DNC List.**

The company-specific DNC rules require telemarketers like Comcast place the telephone number of persons that request not to be contacted on its internal Do Not Call list. Comcast argues that it is permitted thirty days within which to keep calling, as a matter of law. MTD at 9. This argument is incorrect.

The plain language of the regulation states that telemarketing calls must cease within a "reasonable time," but no later than within thirty days from the request. 47 C.F.R.§64.1200(d)(3) states:

> Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made.
>
> Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) <u>must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made</u>.

---

[4] Again, factual issues surrounding consent or EBR are not appropriate at this stage of the case.

> This period may not exceed thirty days from the date of such request.
>
> If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request.
>
> A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity. [Paragraph breaks and emphasis added.]

The plain language of this paragraph belies Comcast's suggestion that telemarketers always have *carte blanche* to make as many telemarketing calls it likes after a company-specific DNC request, as long as there are no calls after thirty days have elapsed.

This reading is consistent with the FCC's 2003 interpretation implementing the regulation, too:

> We note that the Commission's rules require that entities must record company-specific do-not-call requests and place the subscriber's telephone number on the do-not-call list at the time the request is made.
>
> Therefore, telemarketers with the capability to honor such company-specific do-not-call requests in less than thirty days must do so. We believe this determination adequately balances the privacy interests of those consumers that have requested not to be called with the interests of the telemarketing industry.
>
> Consumers expect their requests not to be called to be honored in a timely manner, and thirty days should be the maximum administrative time necessary for telemarketers to process that request.

*In re TCPA 2003,* 18 FCC Rcd. at 14,069, ¶94 (paragraph breaks and emphasis supplied). The FCC's reference to thirty days in the regulation was made in recognition that an immediate prohibition would place an inappropriate burden on small businesses that are not set up to

process such requests, and possibly where the request must be forwarded to a third party company was making calls on behalf of the recipient of the request. See *id.* at ¶¶ 93-94.

Comcast is one of those companies that is required to cease calling "at the time the request is made." *Id.* at ¶ 94. Comcast is one of the largest and most technologically advanced corporations in the United States. It has been sued previously by the Federal Trade Commission for violations of the company-specific DNC rules, and settled that lawsuit, in part, by agreeing to comply with the DNC rules. Exhibit C. Discovery in this case will show that Comcast had the technological ability, and the affirmative duty, to receive, process and honor plaintiff's do not call request immediately. Its argument that it was entitled to make as many telemarketing calls as it wanted within thirty days of a do not call request is simply an inaccurate as a matter of law.

**CONCLUSION**

Comcast's motion to dismiss should be denied in its entirety.

Respectfully submitted,

/s/Alexander H. Burke

Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com