**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

NICHOLAS MARTIN,

        Plaintiff,

    vs.

COMCAST CORPORATION,

      Defendant.

Case No. 1:12-cv-6421

Honorable John A. Nordberg

---

**REPLY IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**

---

Gordon B. Nash, Jr.
Chancé L. Cooper
**Drinker Biddle &Reath LLP**
191 North Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Tel: (312) 569-1000
Fax: (312) 569-3000

Seamus C. Duffy
Michael W. McTigue, Jr.
**Drinker Biddle &Reath LLP**
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Tel: (215) 988-2700
Fax: (215) 988-2757

*Counsel for Defendant*
*Comcast Corporation*

December 3, 2012

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ....................................................................................................ii

I.      INTRODUCTION ....................................................................................................... 1

II.     ARGUMENT ............................................................................................................... 2

     A.     Comcast Did Not Violate Section 227(b) (Count I) ................................... 2

          1.     Consent is Apparent from the Face of the Complaint ................................. 2

          2.     Consent Occurred When Plaintiff Gave Comcast His Number ................... 4

     B.     Comcast Did Not Violate Section 227(c) (Count II) ................................... 6

          1.     The EBR Exemption is Apparent from the Face of the Complaint ............ 7

               a.     The EBR Exemption Applies to Calls to Wireless Numbers .......... 7

               b.     The EBR Exemption Applies to Calls to Former Customers .......... 9

          2.     Comcast Complied with any Company-Specific DNC Request................ 10

III.   CONCLUSION............................................................................................................ 13

i

**Page**

# TABLE OF AUTHORITIES

**CASES**

*CE Design, Ltd. v. Prism Bus. Media, Inc.*,
   606 F.3d 443 (7th Cir. 2010) ....................................................................................4

*Chesbro v. Best Buy Stores, L.P.*,
   697 F.3d 1230 (9th Cir. 2012) ..................................................................................5

*Edeh v. Midland Credit Mgmt.*,
   748 F. Supp. 2d 1030 (D. Minn. 2010)....................................................................5

*Greene v. DirecTV, Inc.*,
   No. 10-0117, 2010 WL 1506730 (N.D. Ill. Apr. 14, 2010)......................................3

*Greene v. DirecTV, Inc.*,
   No. 10-0117, 2010 WL 4628734 (N.D. Ill. Nov. 8, 2010) ...................................3, 4

*Kohuke v. Delta Airlines, Inc.*,
   932 F. Supp. 1110 (N.D. Ill. 1996) ........................................................................10

*Leckler v. Cashcall, Inc.*,
   No. 07-4002, 2008 WL 5000528 (N.D. Cal. Nov. 21, 2008) ...................................5

*MDFC Loan Corp. v. First Shopping Ctr. P'ship*,
   No. 93-4481, 1996 WL 99909 (N.D. Ill. Mar. 1, 1996) ..........................................3

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
   -- U.S. --, 132 S. Ct. 2566 (2012) ............................................................................8

*Shupe v. JPMorgan Chase Bank of Ariz.*,
   No. 11-0501, 2012 WL 1344786 (D. Ariz. Apr. 18, 2012) ....................................10

*State Farm Mut. Auto. Ins. Co. v. Comm'r*,
   698 F.3d 357 (7th Cir. 2012) ....................................................................................8

*Thrasher-Lyon v. CCS Commercial, LLC*,
   No. 11-4473, 2012 WL 3835089 (N.D. Ill. Sept. 4, 2012)...................................5, 6

*Thrasher-Lyon v. CCS Commercial, LLC*,
   No. 11-4473, 2012 WL 5389722 (N.D. Ill. Nov. 2, 2012) .......................................6

*Thrasher-Lyon v. Ill. Farmers Ins. Co.*,
   861 F. Supp. 2d 898 (N.D. Ill. 2012) ...................................................................2, 3

**Page**

*Zoch v. City of Chicago*,
 No. 94-4788, 1997 WL 89231 (N.D. Ill. Feb. 4, 1997) ..........................................................11

**REGULATORY AUTHORITIES**

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
 Declaratory Ruling, 23 F.C.C.R. 559 (Jan. 4, 2008)....................................................4

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
 Report & Order, 7 F.C.C.R. 8752 (Sept. 17, 1992) ....................................................4

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
 Report & Order, 27 F.C.C.R. 1830 (Feb. 15, 2012) ...............................................4, 6

**STATUTES, RULES & REGULATIONS**

47 C.F.R. § 64.1200 ..............................................................................................7, 9, 12

47 U.S.C. § 227 ............................................................................................................7, 8

**OTHER AUTHORITIES**

68 Fed. Reg. 44144, Report & Order (July 25, 2003) ................................7, 8, 9, 12, 13

2 James Wm. Moore et al., *Moore's Federal Practice* § 12.34 (3d ed. 2012) ...............................2

Shannon D. Torgerson, *Getting Down to Business: How the Established Business
 Relationship Exemption to the National Do-Not-Call Registry Forces Consumers to
 Pay for Unwanted Sales Calls,* 3 Nw. J. Tech. & Intell. Prop. 24 (2004) ................................8

## I.   INTRODUCTION

This is a manufactured lawsuit by a professional plaintiff whose claims have no merit. As Plaintiff concedes, this case is not about some out of the blue communication from someone with whom he had no prior relationship.  Rather, he alleges that he received calls from Comcast, from which he had been receiving cable service.  Based on a logical reading of the Complaint, Plaintiff has failed to assert any viable claim under the Telephone Consumer Protection Act ("TCPA") or Federal Communications Commission ("FCC") regulations.  With that in mind, Plaintiff has tried to deflect attention away from the "facts" of his own case.  Facts are stubborn, however, and even the few alleged in his Complaint compel dismissal with prejudice.

In essence, Plaintiff's Opposition would have the Court rewrite the TCPA and ignore the FCC's authoritative interpretations of it.  As for Count I, Plaintiff asks the Court to delay the inevitable dismissal of his claims because he did not plead the words "I gave Comcast my number," even though the only reasonable reading of the Complaint is that he did, and he studiously avoids denying that he did.  He argues in the alternative that providing his number to Comcast did not amount to consent, even though the FCC has said just the opposite, and the authority he cites is unpersuasive (because the court later vacated it) or unrelated (because the plaintiff in the case he cites never gave her number to the defendant).  As for Count II, he argues that his claim based on the national do-not-call ("DNC") rules survives because the established business relationship ("EBR") exemption does not apply to calls to wireless phones or former customers, even though he cites no favorable authority and ignores unfavorable authority. Similarly, he tries to save his claim based on the company-specific DNC rules by arguing that Comcast should have complied with his allegedly mailed request immediately because it is a "large company," even though the FCC created the "reasonable" grace period precisely because

large companies have large databases that take time to administer, and even though his guesses about Comcast's ability to comply more quickly appear nowhere in the Complaint.

## II. ARGUMENT

### A. Comcast Did Not Violate Section 227(b) (Count I)

Comcast explained in its opening brief that the Complaint does not state a claim under 47 U.S.C. § 227(b) because Comcast received Plaintiff's consent to call his wireless number. Plaintiff opposes dismissal by arguing that he did not allege that he gave Comcast his number, or, alternatively that doing so did not amount to consent. Neither argument withstands scrutiny.

#### 1. Consent is Apparent from the Face of the Complaint

Plaintiff argues that the Court cannot dismiss this claim because consent is an affirmative defense that Comcast has yet to plead in an answer or prove in discovery. *See* Opp'n at 6 (consent "is an affirmative defense for which the defendant bears the burden of proof."); *id.* at 7 (discussing "Comcast's yet-to-be-asserted consent affirmative defense"). Whether consent is an affirmative defense is irrelevant. Indeed, Plaintiff acknowledges that "a defendant may 'prove' an affirmative defense through the allegations in the complaint," *id.* at 9, and at least one decision he cites says as much. *See Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 904 (N.D. Ill. 2012); *see also* 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.34[4][b] (3d ed. 2012) ("Dismissal under Rule 12(b)(6) may also be appropriate when a successful affirmative defense or other bar to relief appears on the face of the complaint…."). The only thing that matters is whether it is apparent from the face of the Complaint that Plaintiff gave Comcast his number. It is.

Plaintiff argues that "there is nothing in the complaint" that clearly alleges that he gave Comcast his wireless number, and that "inferences are to be taken in favor of the plaintiff."

Opp'n at 6-7. It is true that Plaintiff omitted the words "I gave Comcast my wireless number" from his Complaint, *see* Compl. ¶ 4 (alleging that Plaintiff is "not aware" of giving his consent). It does not follow, however, that the Court must infer that he did not consent as he is only entitled to inferences that are **reasonable**. *See MDFC Loan Corp. v. First Shopping Ctr. P'ship*, No. 93-4481, 1996 WL 99909, at *11 (N.D. Ill. Mar. 1, 1996). Plaintiff alleges that he was a Comcast customer, does not allege that he did not give Comcast his wireless number, does not allege that he gave some other number and does not allege that Comcast obtained his number from any third party. Moreover, when Plaintiff allegedly cancelled his service he contends that he mailed a letter to Comcast on or about October 4, 2011 that states, "Please remove my cell phone number, 630-XXX-3771, from your database." Opp'n at Ex. A; *see also* Compl. ¶ 14. The only reasonable inference to be made from the Complaint and this alleged mailing is that Plaintiff gave his wireless number to Comcast and, by doing so, consented to being called on it.

Plaintiff's authority is not persuasive. For example, *Thrasher-Lyon* is different from the this case because the plaintiff alleged that she "never consented for CCS to call her at that telephone number." *Thrasher-Lyon*, 861 F. Supp. 2d at 905. That allegation also had the benefit of being plausible as the defendant in that case obtained her phone number from a third party (the police) rather than from her. *Id.* Similarly, the plaintiff in *Greene* affirmatively alleged that "she had not provided prior express consent." *Greene v. DirecTV, Inc.*, No. 10-0117, 2010 WL 1506730, at *2 (N.D. Ill. Apr. 14, 2010). That allegation turned out to be false, and the court later entered judgment against her based on her consent. *See Greene v. DirecTV, Inc.,* No. 10-0117, 2010 WL 4628734, at *3 (N.D. Ill. Nov. 8, 2010). Here, by contrast, Plaintiff concedes that he had a business relationship with Comcast and that Comcast had his wireless number. He alleges, however, that he "is not aware" that he consented to calls on his wireless number,

Compl. ¶ 4, and his Opposition artfully avoids actually denying that he did. Opp'n at 5-6 ("Plaintiff revoked any consent that might have previously been given."). Not once does he deny giving Comcast his number, or allege any other plausible way that Comcast obtained his number. Such sharp pleading tactics should not be countenanced.

### 2. Consent Occurred When Plaintiff Gave His Number To Comcast

Plaintiff next argues that whether he gave his number to Comcast is irrelevant because "the mere provision of one's cellular number to a creditor does not constitute consent to receive non-debt collection calls." Opp'n at 7 n.1. As Comcast demonstrated in its Motion, however, the FCC and the courts agree that "provision of one's cellular number" *does* amount to consent.[1] *See* Mot. at 4 (citing *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling, 23 F.C.C.R. 559, ¶ 9 (Jan. 4, 2008) ("The restriction on calls to emergency lines, pagers, and the like does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications."); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report & Order, 7 F.C.C.R. 8752, ¶ 31 (Sept. 17, 1992) ("persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given," and "telemarketers will not violate [FCC] rules by calling a number which was provided as one at which the called party wishes to be reached."); *Greene*, 2010 WL 4628734, at *3 (rejecting Plaintiff's argument in case filed by his counsel)). Plaintiff does not dispute that authority. Instead, he embraces it for another proposition. *See* Opp'n at 8 (citing *Greene*).

---

[1]  In February 2012, the FCC approved amendments that would require written consent. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report & Order, 27 F.C.C.R. 1830, 1838 (Feb. 15, 2012) ("*2012 TCPA Order*"). Because those amended rules have yet to take effect, the parties have referred to the current iteration of the rules. *See, e.g.*, *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 445 (7th Cir. 2010) (applying version of the TCPA in effect at time of operative facts).

Plaintiff cites a number of decisions in note 1 of the Opposition that are not persuasive. Opp'n at 7 n.1. The *Leckler* decision has no persuasive force because the court later vacated it and dismissed the case because its prior decision had the effect of overruling the FCC decisions cited above, which district courts lack jurisdiction to do. *Leckler v. Cashcall, Inc.*, No. 07-4002, 2008 WL 5000528, at *2-3 (N.D. Cal. Nov. 21, 2008) ("The Court … did not have jurisdiction to review the FCC's declaratory ruling… Accordingly, this Court's May 20 Order is VACATED.") (not cited by Plaintiff). *The Edeh* decision is equally unhelpful because there is no indication that anyone brought the effect of the FCC decisions cited above to the court's attention. *Edeh v. Midland Credit Mgmt.*, 748 F. Supp. 2d 1030, 1038 (D. Minn. 2010). Moreover, the *Edeh* case is not applicable here because the defendant in that case obtained the plaintiff's number from a third party rather than the plaintiff. *See id.* ("Midland argues that it obtained Edeh's phone number when it bought Edeh's debt").

Similarly, the plaintiff in *Thrasher-Lyon* never gave her number to the defendant. Rather, she gave it to the owner of the car she hit and the police, who in turn gave it to the defendant. *Thrasher-Lyon v. CCS Commercial, LLC*, No. 11-4473, 2012 WL 3835089, at *1 (N.D. Ill. Sept. 4, 2012).[2] The fact that the plaintiff did not provider her number to defendant was the only reason the court found in favor of plaintiff:

> The Court acknowledges, and does not attempt to review or alter, the FCC's ruling that ***"prior express" consent is provided when a debtor gives contact information to a creditor in the course of the transaction giving rise to the debt***….
>
> What we have here is different. Plaintiff's claim does not involve a debtor-creditor relationship or other relationship where providing a phone number "reasonably evidences" express consent to be called…. This is in marked contrast to the 2008 FCC ruling and the creditor-debtor cases on which CCS relies.

---

[2] Likewise, the defendant in *Chesbro* enrolled the plaintiff in its reward program without his knowledge. *See Chesbro v. Best Buy Stores, L.P.*, 697 F.3d 1230, 1232 (9th Cir. 2012).

> *A common theme of those cases is the plaintiff's provision of contact information in connection with the knowing creation of a debt by voluntarily opening an account or otherwise contracting to pay for some service…. Under the FCC's reasoning, consent to be contacted about a debt or bill can be reasonable inferred from the provision of contact information in connection with the voluntary establishment of a commercial relationship by means of a transaction creating a debt.*

> [I]t would be a stretch to call Farmers a "creditor" of Thrasher-Lyon, and stranger still to view getting into a car crash as the equivalent of applying for a loan or contracting for services. Thrasher-Lyon did not affirmatively make contact … in order to obtain a service and provide her number as part of the process and sought no relationship with either company. *She did not give up her phone privacy in exchange for a benefit such as a loan or cable television.*

*Id.* at *3-5 (emphasis added). Even a cursory review of that opinion, or the more recent opinion denying reconsideration, would have revealed that it actually supports Comcast. *See id.*; *see also Thrasher-Lyon v. CCS Commercial, LLC*, No. 11-4473, 2012 WL 5389722, at *2 (N.D. Ill. Nov. 2, 2012) ("Again, a more careful reading of the Court's opinion would have shown CCS that the Court acknowledged the binding nature of both the 2008 and 1993 FCC Orders.").

## B.    Comcast Did Not Violate Section 227(c) (Count II)

Comcast explained in its opening brief that the Complaint does not state a claim under Section 227(c) because Comcast had an EBR with Plaintiff, which was an exemption from the national DNC rules,[3] and because it reasonably responded to any request that it stop calling him, which is all that is required by the company-specific DNC rules. Plaintiff argues that he did not allege facts giving rise to an EBR with Comcast, and that Comcast should have complied with his request immediately. We take each in turn.

---

[3]    The FCC has approved amendments that would eliminate this exemption going forward. *See 2012 TCPA Order,* 27 F.C.C.R. 1830, ¶¶ 35-43. As explained above, however, the parties have referred to the FCC regulations that are currently in effect. *See supra.*

1.      **The EBR Exemption Is Apparent from the Face of the Complaint**

As above, which party bears the burden of proof is irrelevant if there is no need for proof, i.e., if the facts are alleged in the Complaint.  *See supra*.  Here, Plaintiff alleged that he was a Comcast customer, Compl. ¶ 13; *see also* Opp'n, Ex. A, which created an EBR as that term is defined by FCC regulations.  *See* 47 C.F.R. § 64.1200(f)(4) (version in effect in October 2011) (defining EBR as "prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity….").  Plaintiff posits that "the complaint does not contain the necessary elements" of the exemption because it does not apply to wireless numbers or former customers.  Opp'n at 9.  He is mistaken.

a.      **The EBR Exemption Applies to Calls to Wireless Numbers**

In arguing that the EBR exemption does not apply to wireless numbers, Plaintiff states that Comcast "omitted" regulatory language from Motion, the implication being that it was trying to hide something of relevance.  Opp'n at 10.  That is false.  Comcast truncated certain redundant or irrelevant regulatory language in the interest of brevity, and each time it did it noted the truncation with an ellipsis.  The specific language at issue here—"residential subscriber"— was irrelevant because the FCC has found that it applies to both wireline ***and*** wireless numbers.  *Rules and Regulations Implementing the Tel. Consumer Prot. Act (TCPA) of 1991*, 68 Fed. Reg. 44144, Report & Order ¶¶ 11-14 (July 25, 2003) ("*2003 TCPA Order*").

When the DNC rules were enacted, a wireless provider argued that wireless subscribers should not be able to register their numbers because 47 U.S.C. § 227(c)(1) only authorized DNC rules that applied to "residential subscribers."  *Id.* ¶ 12.  The FCC disagreed, finding that reading "far too restrictive and inconsistent with the intent of Section 227."  *Id.* ¶ 13.  Specifically, it

reasoned that many people use wireless phones as their primary (or only) "residential" phone,[4]

and that Congress knew how to include or exclude wireless phones when it so desired.[5]

Plaintiff asks the Court to find that the term "residential subscriber" means one thing for

purposes of the DNC registry but another thing for purposes of the exemption to the registry.

There is no authority for that proposition cited in his Opposition, or elsewhere for that matter.

Statutory language is presumed to be internally consistent absent clear evidence of a contrary

intent, of which there is none here. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Comm'r*, 698

F.3d 357, 370 (7th Cir. 2012) ("a term or phrase is ordinarily given the same meaning throughout

a statute."). As one commenter explained,

> The FCC reasons that if "Congress had intended to exclude wireless subscribers
> from the benefits of the TCPA, it knew how to address wireless services or
> consumers explicitly." Similarly, if the FCC had wished to eliminate the EBR
> exemption for wireless devices, it seems likely that it unambiguously would have
> done so.

Shannon D. Torgerson, *Getting Down to Business: How the Established Business Relationship*

*Exemption to the National Do-Not-Call Registry Forces Consumers to Pay for Unwanted Sales*

*Calls*, 3 Nw. J. Tech. & Intell. Prop. 24, 30 (2004). There is simply no principled reason why

wireline subscribers should be allowed to receive calls from the companies with which they have

an EBR but wireless subscribers should not be.

---

[4]      *See 2003 TCPA Order*, 68 Fed. Reg. 44144, ¶ 13 ("It is well established that wireless
subscribers often use their wireless phones in the same manner in which they use their residential
wireline phones. Indeed, as even Nextel recognizes, there is a growing number of consumers
who no longer maintain wireline phone service, and rely only on their wireless telephone service.
Thus, we are not persuaded by Nextel's arguments.").

[5]      *See 2003 TCPA Order*, 68 Fed. Reg. 44144, ¶ 13 ("In addition, had Congress intended to
exclude wireless subscribers from the benefits of the TCPA, it knew how to address wireless
services or consumers explicitly."). Unlike the DNC rules in Section 227(c), other parts of
Section 227 specifically reference cellular phones. *See* 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(2)(C);
*see also Nat'l Fed'n of Indep. Bus. v. Sebelius*, -- U.S. --, 132 S. Ct. 2566, 2583 (2012) ("Where
Congress uses certain language in one part of a statute and different language in another, it is
generally presumed that Congress acts intentionally.").

### b.    The EBR Exemption Applies to Calls to Wireless Numbers

Alternatively, Plaintiff argues that the EBR exemption does not apply to calls to former customers.  *See* Opp'n at 10-11.  That is wrong, however, as the exemption by its plain terms applies to a "prior or existing relationship."   47 C.F.R. § 64.1200 (f)(4) (version in effect in October 2011).  Plaintiff does not address the authority cited in the Motion, in which the FCC explained that the exemption allows companies to call former customers to "win back" business:

> We believe the ability of sellers to contact existing customers is an important aspect of their business plan and often provides consumers with valuable information regarding products or services that they may have purchased from the company.  For example, magazines and newspapers may want to contact customers whose subscriptions have or soon will expire and offer new subscriptions….
>
> To the extent that some consumers oppose this exemption, we find that once a consumer has asked to be placed on the seller's company-specific do-not-call list, the seller may not call the consumer again regardless of whether the consumer continues to do business with the seller.  We believe this determination constitutes a reasonable balance between the interests of consumers that may object to such calls with the interests of sellers in contacting their customers….
>
> ….
>
> Therefore, consistent with the language in the definition, a company's prior relationship with a consumer entitles the company to call that consumer for eighteen (18) months from the date of the last payment or financial transaction, even if the company does not currently provide service to that customer.  For example, a consumer who once had telephone service with a particular carrier or a subscription with a particular newspaper could expect to receive a call from those entities in an effort to "win back" or "renew" that consumer's business within eighteen (18) months.  In the context of telemarketing calls, a consumer's "prior or existing relationship" continues for eighteen (18) months (3 months in the case of inquiries and applications) or until the customer asks to be placed on that company's do-not-call list.

*2003 TCPA Order*, 68 Fed. Reg. 44144, ¶¶ 20-21, 81.

Instead, Plaintiff argues that "termination of EBR is immediate," and again claims that Comcast omitted important regulatory language from its brief. Opp'n at 11.[6] Nothing in the *2003 TCPA Order* suggests that termination of an EBR is "immediate." Plaintiff's interpretation of the *2003 TCPA Order* is untenable, however, as it would read the "reasonable" grace period out of the DNC rules entirely. *See, e.g., Kohnke v. Delta Airlines, Inc.*, 932 F. Supp. 1110, 1111-112 (N.D. Ill. 1996) ("[A] court should not construe a statute in a way that makes words or phrases meaningless, redundant, or superfluous."). After all, what point would there be in registering a number within 30 days after a request if the request already had the effect of stopping calls? There is no principled reason why the time periods would be different, and Plaintiff cites no authority suggesting that the FCC intended that to be so. The only reasonable reading of the rules is that the "termination" they refer to is the termination of the ability to call the customer, that is, the request to be placed on the DNC list. *See Shupe v. JPMorgan Chase Bank of Ariz.*, No. 11-0501, 2012 WL 1344786, at *2 (D. Ariz. Apr. 18, 2012) ("Termination of the established business relationship refers only to termination of the privilege to call based on the exemption and does not require a termination of all business between the parties."). Termination of the EBR becomes effective only after the same reasonable grace period.

## 2.     Comcast Complied with any Company-Specific DNC Request

As for the adequacy of Comcast's response to Plaintiff's alleged October 4, 2011 letter, Plaintiff states that "Comcast argues that it is permitted thirty days within which to keep calling, as a matter of law." Opp'n at 11; *see also id.* at 12 (describing Comcast's supposed "suggestion

---

[6]     He is wrong here as well, however, as Comcast acknowledged that this EBR exemption can be avoided by asking that a company place a number on its company-specific DNC registry. *See* Mot. at 8 ("[O]nce a consumer has asked to be placed on the seller's company-specific do-not-call list, the seller may not call the consumer again…."). He even underlines a portion of a quotation and say that "[t]he underlined portion was omitted from Comcast's brief," Opp'n at 11, even though ***no portion*** of that quotation appeared in Comcast's opening brief.

that telemarketers always have *carte blanche* to make as many telemarketing calls it likes after a company-specific DNC request, as long as there are no calls after thirty days have elapsed."). That is a straw man, for Comcast did not argue that defendants can "always" wait 30 days before complying with a DNC request. On the contrary, it clearly acknowledged that companies have a reasonable time to comply, and that DNC requests may be honored in less than 30 days:

> [T]he FCC has ruled that requests must be honored "within a reasonable time" ***not to exceed thirty (30) days***…. Plaintiff has alleged no facts that would suggest Comcast called him more than thirty (30) days later, ***or that would suggest that Comcast should have had less than thirty (30) days to register his DNC request.*** It follows that this claim should be dismissed even if we accept Plaintiff's allegations as true.

Mot. at 9-10 (emphasis added).

Rather than respond to that argument, Plaintiff argues that Comcast should have honored his DNC request immediately because "[d]iscovery in this case will show that Comcast had the technological ability … to receive, process and honor plaintiffs do not call request immediately." Opp'n at 13. That is wrong for at least two reasons. First, Plaintiff's argument finds no support in the Complaint. Instead, it is based on what he hopes will be revealed in discovery and on what he reads into the documents that he attached to his Opposition rather than his Complaint— never mind that he acknowledges elsewhere that "factual issues … are not appropriate at this stage of the case." Opp'n at 11 n.4.[7] Second, it finds no support in the DNC rules, which

---

[7] Exhibits B and C to the Opposition should be stricken. Aside from being improper, *see Zoch v. City of Chicago*, No. 94-4788, 1997 WL 89231, at *20 (N.D. Ill. Feb. 4, 1997) (striking documents attached to opposition to motion to dismiss), they are irrelevant. Exhibit B consists of unauthenticated documents making unsubstantiated claims based on hearsay within hearsay, and in any event has no relevance to Plaintiff's individual claim, which is the only claim before the Court. Exhibit C is a stipulated judgment that stems from events that predate this case by six years, that was executed "without … admitting liability for any of the violations alleged in the Complaint," and that "does not constitute and shall not be interpreted to constitute an admission by Comcast or a finding that the law has been violated as alleged in the Complaint, or that the facts alleged in the Complaint, other than jurisdictional facts, are true." Opp'n, Ex. C at 2.

differentiate between the "recording" of a request on the one hand and the later "honoring" of

that request on the other:

> If a person or entity making a call for telemarketing purposes … receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity **must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made**.  Persons or entities making calls for telemarketing purposes … **must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made.**  This period may not exceed thirty days from the date of such request.

47 C.F.R. § 64.1200(d)(3) (emphasis added).  The *2003 TCPA Order* does likewise:

> Although some administrative time may be necessary to **process** such requests, this process is now largely automated. As a result, such requests can often be **honored** within a few days or weeks. Taking into consideration both the large databases of such requests maintained by some entities and the limitations on certain small businesses, we conclude that a reasonable time to **honor** such requests must not exceed thirty days from the date such a request is made…. We note that the Commission's rules require that entities must **record** company-specific do-not-call requests and place the subscriber's telephone number on the do-not-call list at the time the request is made.  Therefore, telemarketers with the capability to **honor** such company-specific do-not-call requests in less than thirty days must do so.  We believe this determination adequately balances the privacy interests of those consumers that have requested not to be called with the interests of the telemarketing industry.  Consumers expect their requests not to be called to be **honored** in a timely manner, and thirty days should be the maximum administrative time necessary for telemarketers to **process** that request.

*2003 TCPA Order*, 68 Fed. Reg. 44144, ¶ 68 (emphasis added).  Simply put, companies need to

"record" requests immediately but do not need to "honor" them immediately.  *See id.*

Plaintiff's argument ignores not only the language but also the spirit of the DNC rules.

Specifically, he argues that Comcast is not entitled to a reasonable grace period because it is

"one of the largest" corporations in the country, and suggests that the only reason the FCC even

allowed a grace period was because of the burden on "small businesses that are not set up to

process such requests."  Opp'n at 12-13.  That position turns the logic of the *2003 TCPA Order*

on its head, however, as the FCC was animated not only by the burden on very small companies

with very few resources, but also by the burden on very large companies with very large databases. *See, e.g.*, *2003 TCPA Order*, 68 Fed. Reg. 44144, ¶ 68 ("Taking into consideration both the large databases of such requests maintained by some entities and the limitations on certain small businesses, we conclude that a reasonable time to honor such requests must not exceed thirty days from the date such a request is made.").

The FCC has recognized and allowed that it may take "a few days or weeks" to process and honor a DNC request after it has been recorded. *Id.* Based on a generous reading of the Complaint, Comcast processed and honored the alleged DNC request within a reasonable time. Plaintiff alleges that he mailed his DNC request "on or about October 4, 2011." Compl. ¶ 14. There is no allegation of receipt of that request. *Id.* But even under the most liberal reading of the Complaint, and assuming receipt three days later on October 7, 2011, by his own admission, within one week, he received no further calls. That is well within the time period allowed under the law and as a matter of law it cannot serve as a basis for a claim under Section 227(c).

## III.  CONCLUSION

For all of the foregoing reasons, Comcast respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice.

Dated: December 3, 2012                    Respectfully submitted,

                                           /s/ Gordon B. Nash
                                           Gordon B. Nash, Jr. (ARDC No. 201799)
                                           Gordon.Nash@dbr.com
                                           Chancé L. Cooper (ARDC No. 6292598)
                                           Chance.Cooper@dbr.com
                                           **Drinker Biddle &Reath LLP**
                                           191 North Wacker Drive, Suite 3700
                                           Chicago, IL 60606-1698
                                           Tel:    (312) 569-1000
                                           Fax:    (312) 569-3000

Seamus C. Duffy
Seamus.Duffy@dbr.com
Michael W. McTigue, Jr.
Michael.McTigue@dbr.com
**Drinker Biddle &Reath LLP**
One Logan Square, Suite 2000
Philadelphia, PA  19103-6996
Tel:    (215) 988-2700
Fax:    (215) 988-2757

*Counsel for Defendant*
*Comcast Corporation*

## **CERTIFICATE OF SERVICE**

I, Gordon B. Nash, Jr., hereby certify that, on the date set forth above, I caused a true and correct copy of the foregoing *Reply in Support of Defendant's Motion to Dismiss* to be served via ECF filing upon the following parties and counsel of record:

> Alexander Holmes Burke
> Burke Law Offices, LLC
> 155 N. Michigan Ave., Suite 9020
> Chicago, IL  60601

                /s/ Gordon B. Nash, Jr.