IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NICHOLAS MARTIN,                    )
                                    )
            Plaintiff,              )
                                    )
                                    )       No. 12 C 6421
       v.                           )
                                    )       Judge John A. Nordberg
COMCAST CORPORATION,                )
                                    )
            Defendant.              )

## MEMORANDUM OPINION AND ORDER

### Introduction

Plaintiff Nicholas Martin filed this putative class action against Comcast Corporation ("Comcast"), asserting two claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*. Plaintiff alleges that Comcast made eight autodialed telemarketing calls to his cell phone during the week of October 8th to October 14th in 2011. Count I alleges that the eight calls violated § 227(b)(1)(A)(iii), which prohibits any autodialed calls to cell phone numbers. Count II alleges that the eight calls also violated § 227(c)(5), which prohibits telemarketing calls to *any* phone number either on the national do-not-call registry or on a company-specific do-not-call list. Plaintiff alleges that he put his cell number on the national list before these events and that he called Comcast on October 4, 2011 and also sent Comcast a letter the same day asking that his cell number be put on Comcast's do-not-call list.

Comcast has filed a motion to dismiss pursuant to Rule 12(b)(6), arguing that both counts should be dismissed as a matter of law because plaintiff consented to receive these calls when he became a Comcast customer and gave his cell phone number as his contact number. As for the October 4th phone call and letter, Comcast argues that the regulations interpreting the TCPA allow for a reasonable grace period to process those requests and that a week is a reasonable time as a matter of law.

### Allegations

As discussed in the argument section below, the parties argue about whether certain facts and inferences may be taken as true. Here, in this section, we will begin by describing the facts as they were set forth in the complaint.

-1-

At some unspecified date, before the events in question, plaintiff put his cell number on the national do-not-call list. (Cmplt. ¶ 10.) Sometime thereafter, Comcast called his cell phone eight times:

- October 8th at 9:59 am.
- October 10th at 1:45 pm.
- October 10th at 7:21 pm.
- October 11th at 11:48 am.
- October 11th at 5:49 pm.
- October 12th at 7:40 pm.
- October 13th at 10:51 am.
- October 14th at 9:25 am.

(¶ 11.) Plaintiff answered two of the calls – the one at 1:45 pm on October 10th and the one at 5:49 pm on October 11th. (*Id.*) The calls were made using an "automatic telephone dialing system," as that term is defined by the TCPA. (¶ 12.)

Plaintiff alleges that the eight calls were made after he "had cancelled service with Comcast" and that they were made "for the purpose of selling Comcast goods and/or services to plaintiff." (¶ 13.) Plaintiff next alleges that he "also separately demanded that the calls stop, in writing, in a letter mailed on or about October 4, 2011." (¶ 14.) Plaintiff alleges that it "is the practice of Comcast to call customers who have cancelled their service in order to try to entice their former customers to return to Comcast." (¶ 15.)

In his response brief to the motion to dismiss, plaintiff provides a few additional facts not in his complaint. He states that he was a Comcast internet customer in 2011. (Pl. Resp. at 2.) Plaintiff also attaches a copy of the October 4th letter. It states:

> This letter is to confirm my cancellation request I made today when I called 800-COMCAST. All Comcast services are to be canceled effective October 5, 2011.
>
> Please remove my cell phone number, 630-XXX-3271, from your database as I do not wish to receive phone calls regarding this account or any type of soliciting. Please direct all future correspondence to the post office box address I have listed atop this letter.

(Dkt. # 22-1.)

Plaintiff is also seeking to assert class action claims. For Count I, he defines the class as:

> All persons who, within four years of filing this complaint, Comcast or someone on its behalf called their cellular telephone number using an automatic telephone dialing system and/or a prerecorded or artificial voice where the purpose of the call was to sell goods and services, where any such calls were made at a time when there was no relationship between Comcast and the called party (*e.g.* after termination of service).

(¶ 20.) For Count II, he defines the class as:

> All persons who on or after a date four years before the filing of this complaint, defendant or someone on its behalf called on their residential or cellular telephone whose numbers are listed on the National Do Not Call Registry, at least twice within any 12 month period, in order to solicit sale of goods or services, where defendant does not have a signed, written agreement between the called party and Comcast that states the consumer agrees to be contacted for telemarketing purposes by Comcast, and includes the telephone number to which the calls were placed.

(¶ 34.)

## Analysis

In its opening brief, Comcast begins with a broad attack on plaintiff, accusing him of being a frequent filer who has cleverly drafted his complaint to obscure the true nature of this dispute so as to avoid dismissal. More specifically, Comcast describes plaintiff as a "professional plaintiff" who has filed at least 30 TCPA cases over the last five years. (Def. Mem. at 1.)[1] Comcast then argues that the complaint creates the misleading impression that Comcast called plaintiff's cell phone out of the blue as part of some indiscriminate marketing campaign when in fact plaintiff was a Comcast customer who voluntarily gave Comcast his cell phone number. Although plaintiff's complaint is vague and confusing in places, as discussed below, we cannot at this point conclude that he is intentionally obscuring facts for an improper purpose, nor can we dismiss his claims merely because he files lots of these cases.

I.    **Autodialed Calls To Plaintiff's Cell Phone Number – Count I.**

Count I is brought pursuant to Section 227(b) of the TCPA. This section provides:

---

[1]Comcast lists the following cases: *Martin v. Redline Recovery Servs.*, No. 08-6153; *Martin v. Weltman, Weinberg & Reis*, No. 08-6181; *Martin v. Valentine & Kebartas*, No. 08-6640; *Martin v. Vengroff Williams & Assocs.*, No. 09-0592; *Martin v. J.C. Christensen & Assocs.*, No. 09-5726; *Martin v. Richard J. Boudreau & Assocs.*, No. 09-5746; *Martin v. West Asset Mgmt.*, No. 09-8067; *Martin v. PPP*, No. 10-0140; *O'Brien v. Panino's, Inc.*, No. 10-2991; *Martin v. LVNV Funding*, No. 10-3300; *Martin v. CCH*, No. 10-3494; *Diparvine v. Ripple 1471*, No. 10-5114; *Vance v. Bureau of Collection Recovery*, No. 10-6324; *Martin v. Bureau of Collection Recovery*, No. 10-7725; *Martin v. Fail Safe Taxes*, No. 11-0155; *Martin v. Midland Funding*, No. 11-3104; *Martin v. Leading Edge Recovery Sols.*, No. 11-5886; *Martin v. Asset Acceptance Cap.*, No. 11-6256; *Martin v. Credit Prot'n Ass'n*, No. 11-6828; *Martin v. Dun & Bradstreet*, No. 12-0215; *Martin v. Tax Works*, No. 12-5485; *Martin v. Comcast Corp.*, No. 12-6421; *Martin v. Midland Credit*, No 09-5343; *Martin v. Fosco Fullett Roselund, P.C.*, No. 09-6236; *Martin v. Piknick Kafe*, No. 10-5142; *Martin v. Ripple 1471, Inc.*, No. 10-5144; *Martin v. Michael Ramirez*, No. 10-5242; *Martin v. Automated Fin.*, No. 11-0525; *Martin v. Sullivan, Dupre & Aldous*, No. 11-0859; *Martin v. Miracle Fin.*, No. 12-6001; *Martin v. Duncan*, No. 12-3881; *Martin v. Cellco P'ship*, No. 12-5147. Plaintiff has not disputed the accuracy of this list, which the Court has not otherwise verified through docket searches.

It shall be unlawful . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone[.]

Relying on the "prior express consent" language, Comcast argues that plaintiff gave consent to receive calls when he gave his cell phone number to Comcast. This argument contains a factual and legal question.

The legal issue is whether the a person consents under this provision if he gives a cell phone number to a company as part of a business relationship. The TCPA does not define "express consent." However, the Federal Communications Commission ("FCC"), which has statutory authority to interpret and enforce the TCPA, has issued several interpretive rulings that support Comcast's interpretation. First, the FCC held that any "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given" and that "telemarketers will not violate [FCC] rules by calling a number which was provided as one at which the called party wishes to be reached." (Def. Mem. at 4, citing *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C.R. 8752, ¶ 31 (September 17, 1992).) Second, the FCC referred to a House Report issued when the TCPA was passed, which states that the "restriction on calls to emergency lines, pagers, and the like does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications." (Def. Mem. at 4, citing *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, ¶ 9 (January 4, 2008) (quoting H.R. Rep. No. 102-317, at 17 (1991); *see also id.* at ¶ 9 ("We conclude that the provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.").)

In response to the legal argument, plaintiff makes only a brief argument, set forth in a footnote, that consent should require something more than giving a company your cell number. Plaintiff believes that express consent only occurs if it is "clearly and unmistakably stated." (Pl. Resp. at 7 n.1.) Plaintiff relies on *Thrasher-Lyon v. CCS Commercial, LLC*, 2012 WL 3835089 (N.D. Ill. Sept. 4, 2012) to support his claim that the FCC regulations are wrong. We are not persuaded by this argument. *Thrasher-Lyon* involved, as Comcast points out and as the district court judge recognized, an unusual set of facts. The plaintiff got into a car accident and gave her phone number to the owner of the car she hit and the police. It was thus a stretch to claim that she had consented. As the court noted, she "did not give up her phone privacy in exchange for a benefit such as a loan or cable television." *Id.* at *4. In sum, we agree with the legal premise behind Comcast's argument. If plaintiff did provide his cell number, he will be deemed to have consented to these calls (assuming he did not later withdraw that consent, an issue addressed in Section II).

This leads to the factual issue. Here, Comcast's argument is more complicated and difficult, in part because we are considering the issue pursuant to a 12(b)(6) motion before the parties have taken discovery. It is also difficult because plaintiff's complaint is vague. We set forth the parties' arguments as they emerged through the skirmishing of the briefing process.

In its opening brief, Comcast attempts to pin down certain facts and to clarify plaintiff's larger theory of the case. Comcast asserts that plaintiff was a Comcast customer. Paragraph 13 alleges that the eight calls were made "after plaintiff had cancelled service with Comcast." The reference to cancellation assumes plaintiff earlier contracted for those services. Along a similar line, paragraph 15 alleges that it "is the practice of Comcast to call customers who have cancelled their service in order to try to entice their former customers to return to Comcast." Putting these allegations together leads to the inference that Comcast called plaintiff's cell phone because this was the phone number plaintiff voluntarily gave to Comcast when he signed up for cable service. Comcast argues that this inference is the only reasonable one that can be drawn from the complaint.. Plaintiff's failure to allege that Comcast got his cell number from a different source – such as telemarketing list or a third party – further supports this inference. (Def. Mem. at 1-2, 5.)

In his response brief, plaintiff does supply some new information, acknowledging for example that he was a Comcast customer. *See* Pl. Resp. at 2. As noted above, he also attaches a copy of the October 4th letter. But plaintiff does not give an unequivocal and straightforward answer to the central question raised by Comcast's opening brief: did he give his cell number to Comcast? Although he does not give a direct answer, he does make the following assertion: "There is nothing in the complaint to support Comcast's bald assertion that plaintiff 'provided his wireless number to Comcast as his primary contact information.'" (Pl. Resp. at 6, quoting Comcast's opening brief.) Aside from this statement, plaintiff does not further discuss the facts bearing on this question, but instead falls back on the general point that consent is an affirmative defense and therefore cannot be adjudicated on a motion to dismiss.

In its reply brief, Comcast repeats its original arguments and also relies on the newly submitted October 4th letter as additional evidence. The letter states: "Please remove my cell phone number, 630-XXX-3271, from your database." (Dkt. # 22-1; Def. Reply at 3.) The cell number referred to is the same number to which the eight calls were made. Comcast argues that the only reasonable reading of this letter is that plaintiff previously gave Comcast this same number when he opened up the account.

Comcast makes a reasonable argument. In the letter, plaintiff asks that Comcast not call him "regarding this account or any type of soliciting." Plaintiff then asks that his cell number (and no other number) be removed from Comcast's database. If plaintiff had given a different number when he opened the account, such as his home landline number, then why did he not ask that this number *also* be removed from the database? (Another possibility is that he did not give any phone number to Comcast when he first opened his account.) More broadly, plaintiff alleges that the eight calls were made "after" he cancelled service (¶ 13) and that it is Comcast's practice to call customers who have cancelled to "entice" them to return to Comcast (¶ 15). These allegations set forth an enticement theory which suggests (although plaintiff never explicitly says so) that the eight calls to him were not cold calls made to a random number but were specifically targeted at him precisely because he had just cancelled services.

While Comcast has made a strong argument, we ultimately agree with plaintiff that this fact remains in dispute. This is because plaintiff in his response brief never explicitly adopted this enticement theory. Rather, he asserted, in the sentence quoted above, that there is nothing to suggest he provided his cell phone number to Comcast. Although this statement is not phrased as a

direct, affirmative statement, it nonetheless suggests only two reasonable interpretations: (i) plaintiff is asserting directly that he did not give his cell phone number; or (ii) plaintiff does not remember what, if any, phone number he gave to Comcast and has no documents such as account forms that would suggest he did so. In other words, plaintiff is proceeding on the theory that Comcast did not look up his account, find the cell number, and then call it. Instead, plaintiff is asserting that Comcast got the number some other way. In conclusion, because plaintiff is maintaining that he did not give his number to Comcast, we must accept this representation as true and must deny Comcast's motion to dismiss Count I because it rests on this factual assumption.

## II.     Do-Not-Call Regulations – Count II.

Count II is also under the TCPA and seeks recovery for the same eight calls, but under Section 227(c) and the FCC regulation interpreting this TCPA provision. Plaintiff alleges that his number was on both the national and company-specific do-not-call lists. Comcast relies on the "existing business relationship" exception set forth in the FCC regulation:

> The term established business relationship . . . means a prior or existing relationship formed by a voluntary two-way communication . . . on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call[.]

47 C.F.R. § 64.1200(f)(12) (version in effect in October 2011). As for whether the October 4th call or letter terminated this relationship, Comcast relies on the following portion of the same FCC regulation:

> Persons or entities making calls for telemarketing purposes . . . must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty (30) days from the date of such request.

47 C.F.R. § 64.1200 (d)(3). Comcast states that it is reasonable to suppose that the October 4th letter (assuming it was actually sent on October 4th by regular mail) would have arrived no earlier than October 7th. No more calls were made after October 14th. Thus, the request was processed within a week. Comcast asks that we hold as a matter of law that a week to honor plaintiff's request is a "reasonable" amount of time, especially since the regulation allows for up to 30 days.

Plaintiff raises several arguments in response. First, he argues that the EBR defense is an affirmative defense and rests on facts not in the complaint. This argument fails because plaintiff has admitted he was a Comcast customer. Second, plaintiff argues that the EBR defense is only available to "residential subscribers"and is not available for calls made to cell phones. We are not persuaded by this argument. As Comcast persuasively argues in its reply brief (at pp. 7-8), there is no principled reason (nor persuasive case law) to support the notion that a residential landline subscribers should be allowed to receive calls from companies with which they have an EBR but that wireless subscribers should not be. (Def. Reply at 8.)

Third, plaintiff argues he revoked his consent with the phone call and letter on October 4th.[2] He argues that Comcast could have put his number on the company-specific list immediately – *i.e.* on October 4th or 5th but in any event days before the first of the eight calls were made. Plaintiff relies on the following passage in the FCC's 2003 interpretative ruling:

> We note that the Commission's rules require that entities must record company-specific do-not-call requests and place the subscriber's telephone on the do-not-call list at the time the request is made. Therefore, telemarketers with the capability to honor such company-specific do-not-call requests in less than thirty days must do so. We believe this determination adequately balances the privacy interests of those consumers that have requested not to be called with the interest of the telemarketing industry. Consumers expect their requests not to be called to be honored in a timely manner, and thirty days should be the maximum administrative time necessary for telemarketers to process that request.

(Pl. Mem. at 12, quoting *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14,069, ¶94 (July 3, 2003) (footnotes omitted).) Relying on this passage, plaintiff argues that the reference to 30 days "was made in recognition that an immediate prohibition would place an inappropriate burden on small businesses that are not set up to process such requests, and possibly where the request must be forwarded to a third party company [that] was making calls on behalf of the recipient of the request." (Pl. Mem. at 12-13.) In contrast to these small companies, plaintiff further argues, Comcast is "one of those companies that is required to cease calling 'at the time the request is made.'" (*Id.* at 13.) This argument is based on plaintiff's assertion that "Comcast is one of the largest and most technologically advanced corporations in the United States." (*Id.*)

Both sides rely on the same language – that the request must be processed in a "reasonable" time but not later than 30 days. Beyond parsing this language, the parties do not point to any cases or other authorities offering specific guidance how to determine when a certain time frame is reasonable. Here, factual details are not yet known. We do not know when the letter was actually sent, by what method, and when it was received.[3] Comcast suggests at one point that the letter might even have arrived on October 8th, which was a Saturday, and that it would not have been opened

---

[2]In a supplemental brief [Dkt. #26], plaintiff brings to this Court's attention the Third Circuit's ruling in *Gager v. Dell Financial Services, LLC*, 727 F.3d 265 (3rd Cir. 2013) and argues that it supports plaintiff's position that he has a legal right to revoke any consent he may have previously given. Comcast, in a supplemental response [Dkt. #29], makes clear that its motion rests on the assumption that plaintiff does have such a right, although Comcast maintains that it had a grace period to process the request. However, Comcast further notes that courts "are not in complete agreement on the issue of whether consumers have the right to revoke their prior express consent." *Id.* at 2 n1.

[3]Comcast in its opening brief even questioned whether the letter was actually sent, stating that it " has yet to locate any evidence of receiving it." (Def. Mem. at 9 n.6.) But Comcast acknowledges, correctly, that we must at this stage assume plaintiff's allegation is true.

until Monday October 10th.  Under this scenario, the time for processing the request would be only four days.

We find that these arguments should be addressed after the facts have been pinned down through discovery. The exact timing could make a difference in assessing reasonableness under the FCC regulation. Plaintiff has also claimed that he made an oral request on the same day he sent the letter. The parties do not discuss whether the fact that plaintiff was making two nearly simultaneous requests – one oral and one written – affects the analysis. Ultimately, we are not persuaded,  based on the parties' current briefs and arguments, either that a week or 10 days is reasonable as a matter of law (as Comcast argues) or that the request should have been processed immediately upon receipt simply because Comcast is a large corporation (as plaintiff argues).

In conclusion, because these facts are not yet developed, we deny Comcast's motion to dismiss Count II.  Comcast should file its answer within two weeks of the date of this order.

ENTER:

JOHN A. NORDBERG
Senior United States District Court Judge

DATED: _November 26, 2013_